Filed 12/18/15  Berg & Berg Enterprises v. City of San Jose CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| BERG & BERG ENTERPRISES, LLC, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CITY OF SAN JOSE et al., <br><br> Defendants and Appellants. | H040152 <br> (Santa Clara County <br> Super. Ct. No. 1-07-CV091955) |

## I.  INTRODUCTION

Plaintiff Berg & Berg Enterprises, LLC (Berg & Berg) is a land developer.  Berg & Berg wanted to build a residential development on land it owned in the Evergreen area of defendant City of San Jose (City) that was zoned campus industrial.  In 2004, Berg & Berg and several other Evergreen property owners who also wanted to build residential developments on land that was zoned campus industrial entered into funding and reimbursement agreements with City.  The agreements provided that the participating property owners would fund the $8,847,740 cost of amending City's general plan and obtaining a zoning change from campus industrial to residential uses, and City would bring the necessary documentation before City's Planning Commission and/or defendant City Council for their consideration in an expeditious manner.

In 2007, the City Council voted to defer consideration of all applications to convert campus industrial land in the Evergreen area to other uses. As a result, the residential developments planned by Berg & Berg and the other property owners did not take place. Berg & Berg filed a government claim against City in which it sought restitution in the amount of $1,892,917 for monies it had paid under the funding and reimbursement agreements. The government claim was unsuccessful and Berg & Berg filed a petition for writ of mandate and complaint against City and the City Council. The matter proceeded to a jury trial in which the jury found that City had not processed Berg & Berg's applications in an expeditious manner. Based on the jury's findings, the trial court ruled that the funding and reimbursement agreement had been rescinded due to failure of consideration, awarded restitution of $6,083,173 to Berg & Berg, and entered judgment in the amount of $6,083,173 plus prejudgment interest of $683,314.20.

On appeal, defendants City and the City Council (hereafter, collectively defendants or City) contend that the trial court's orders with respect to City's demurrer, motions in limine, motion for directed verdict, and motion for new trial should be reversed; the jury verdicts and the damages award in the statement of decision should be vacated; and the judgment should be reversed. For reasons that we will explain, we determine that the trial court erred in allowing Berg & Berg to assert claims against City on behalf of the other participating property owners who had not filed government claims, and therefore City's motion for new trial should have been granted.

We will therefore reverse the judgment and remand the matter with directions to the trial court to (1) grant City's motion for new trial; (2) conduct a new court trial limited to the issue of determining the amount of restitution to be awarded to Berg & Berg based on its proportionate share of the consideration paid by the participating property owners under the 2004 and 2006 funding and reimbursement agreements; and (3) determine the amount of prejudgment interest to be awarded.

Berg & Berg has filed a cross-appeal contending that the trial court erred in granting City's motion for summary adjudication of the cause of action for violation of the equal protection clause. For the reasons stated below, we find no merit in Berg & Berg's contention and we will affirm the trial court's order.

Having concluded that the judgment should be reversed, we further conclude that the issues raised by the parties on appeal and cross-appeal regarding prejudgment interest are moot.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Pleadings*

In 2007, Berg & Berg filed its original combined petition for writ of mandate and complaint against City and the City Council, which arose from Berg & Berg's ownership of a 175-acre parcel in City's Evergreen area. After two rounds of demurrers, Berg & Berg filed its third amended petition for writ of mandate and complaint (hereafter, the complaint) in 2011.

According to Berg & Berg's allegations in the complaint, its parcel was located within an area that was subject to City's Evergreen development policy (EDP) and was zoned campus industrial under City's general plan. After being approached by City in 2002, Berg & Berg began providing City with funding that would facilitate new residential development within the EDP area.

Berg & Berg further alleged that in 2003 and 2006 the City Council approved funding and reimbursements between City and Yerba Buena Opco, Inc. (Yerba Buena Opco) regarding the development of property within the EDP. According to Berg & Berg, Yerba Buena Opco "executed the Reimbursement Agreement on behalf of the 'Participating Property Owners,' which are defined in the Reimbursement Agreement as 'property owners and potential developers in the Evergreen-East Hills Area.' "

Under the funding and reimbursement agreements, the participating property owners, including Berg & Berg, agreed "to fund the costs of preparation of a community-

3

based Smart Growth Strategy, related General Plan amendments, an updated Evergreen Area Development Policy, and related studies, infrastructure funding mechanism, and environmental documents, all as they pertain to the Evergreen Area (collectively identified in the Reimbursement Agreement as 'Strategy Documents')." The funding and reimbursement agreements also provided that City would process the strategy documents " 'in an expeditious manner' " and " 'take all reasonable steps . . . to meet timelines for performance' . . . including processing the Strategy Documents for final hearing before the City no later than December 2006."

In 2005, Berg & Berg filed two development applications to amend City's General Plan and to change the zoning on its property within the EDP area to allow residential development. In 2006, according to Berg & Berg, the City Planning Commission recommended that the City Council adopt either the developers' proposal of 2,000 residential units or the staff recommendation of 1,275 residential units.

During its May 15, 2007 meeting, the City Council deferred consideration of all proposed conversions of campus industrial land until the completion of City's general plan update in 2008. Berg & Berg further alleged that on June 26, 2007, the City Council directed staff to "discourage any proposed general plan amendments for residential uses" and approved a memorandum indicating that the City Council supported preservation of the campus industrial site for employment growth. Berg & Berg asserted that as a result of City Council's actions on May 15, 2007, and June 26, 2007, Berg & Berg's "proposed conversion of the Berg Parcel to residential uses was effectively denied by the Council, as the Council's unequivocal public statements and directions made clear that it would not act on Berg's application for years, nor would it approve Berg's applications."

Berg & Berg attached as an exhibit to the complaint a copy of the government claim that it filed with City on January 3, 2008. The government claim stated that the name of the claimant was "Carl E. Berg, on behalf of Berg & Berg Enterprises, LLC" and the dates of the incidents or occurrences causing the claim were May 15, 2007, and

4

June 26, 2007.  According to Berg & Berg's allegations in the complaint, the terms of the funding and reimbursement agreements provided that Yerba Buena Opco "assigned to Berg [& Berg] the right to pursue the claims made in this case."

Regarding the circumstances of the claim, Berg & Berg stated in its government claim that "[c]laimant is a party to a 'Funding and Reimbursement Agreement By and Between the City of San Jose and Certain Evergreen Property Owners Regarding the Evergreen-East Hills Vision Strategy and Related Environmental Documents,' last amended on June 27, 2006 ('Reimbursement Agreement').  Pursuant to the Reimbursement Agreement, Claimant has paid substantial sums to the City for the preparation of certain planning documents, including Claimant's application for a General Plan amendment and for rezoning to allow residential uses on Claimant's property.  In return, the City promised to timely process the development applications and present them to the Planning Commission or City Council no later than December 2006.  The City's representations were false, and the City has failed to perform its obligations under the Reimbursement Agreement.  Claimant seeks reimbursement of the monies paid to the City pursuant to the Reimbursement Agreement.  Claimant separately seeks damages from the City for violation of the Equal Protection Clause and nonmonetary relief."

Berg & Berg described its claimed loss in its government claim as "[r]estitution in the amount of $1,892,917 for monies paid under Reimbursement Agreement, so far as is known at this time.  Other damages to be determined."

Based on these allegations, Berg & Berg petitioned for writs of mandate compelling the City Council to set aside its decisions of May 15, 2007 and June 26, 2007.  The complaint included causes of action for rescission/restitution, promissory estoppel, money had and received, specific performance, declaratory relief, violation of the equal protection clause, and breach of contract and breach of the covenant of good faith and fair dealing.

5

Both Berg & Berg and City filed motions for summary adjudication.[1]  In its September 8, 2011 order, the trial court denied Berg & Berg's motion for summary adjudication of the causes of action for rescission/restitution and money had and received.  The trial court granted City's motion for summary adjudication of the causes of action for declaratory relief and violation of the equal protection clause, and denied summary adjudication of the remaining causes of action.

### B.  *Pretrial Proceedings*

Among other pretrial motions and proceedings, the trial court held a hearing under Evidence Code section 402[2] on the issue of whether Berg & Berg could assert a claim against City arising from the funding and reimbursement agreements that included the other participating property owners' claims against City under an assignment of rights. City argued in pretrial briefing that since the other participating property owners had not filed a government claim and had not attempted to assign their rights to Berg & Berg until 2010, Berg & Berg could not assert a government claim that included the government claims of the other participating property owners.

In its May 17, 2012 written order, the trial court ruled that the government claim filed by Carl Berg on January 3, 2008, had substantially complied with the requirements of the Government Claims Act, which, the court determined, "was designed to allow for the addition of later expanded claims as those became known."  The court also

---

[1] Berg & Berg's motion for summary adjudication was not included in the record on appeal.

[2] Evidence Code section 402 provides:  "(a) When the existence of a preliminary fact is disputed, its existence or nonexistence shall be determined as provided in this article.  [¶]  (b) The court may hear and determine the question of the admissibility of evidence out of the presence or hearing of the jury; but in a criminal action, the court shall hear and determine the question of the admissibility of a confession or admission of the defendant out of the presence and hearing of the jury if any party so requests.  [¶] (c) A ruling on the admissibility of evidence implies whatever finding of fact is prerequisite thereto; a separate or formal finding is unnecessary unless required by statute."

6

determined that "[a]t this point, the evidence shows that an assignment of rights was made to Berg prior to his filing the claim on January 3, 2008. However, there has been no showing that Berg knew the full extent of a potential claim based upon the assignment at the time he filed his claim document."

In other pretrial proceedings, the trial court decided to bifurcate the "writ issues" due to the court's concern that the case was approaching the Code of Civil Procedure section 583.310 mandatory five-year deadline to bring a civil case to trial. The case proceeded first to a jury trial on the causes of action for breach of contract, money had and received, rescission, and promissory estoppel.

C. *Trial Evidence*

### 1. Development of the Evergreen Properties

In 2001, a real estate company, Legacy Partners Commercial, Inc. (Legacy), through its partner entity, Yerba Buena Opco, purchased a large property in the Evergreen area of San Jose that was zoned campus industrial. The campus industrial zoning allowed the property to be used for offices, industrial buildings, and research and development buildings. According to Steven Dunn, Legacy's senior managing director for Northern California, Legacy originally planned to build research and development buildings for high-tech companies on its Evergreen property.

Legacy stopped the process of developing its Evergreen property for research and development buildings after the "Dot Com implosion" occurred in 2001 and the demand for research and development buildings disappeared. At that time, Legacy decided that it would develop the property for residential uses. After Dunn obtained support from the community and from Laurel Prevetti of City's planning staff for the concept of converting Legacy's Evergreen property to residential uses, Legacy submitted an application for a general plan amendment. A general plan amendment was required to change the zoning from campus industrial to residential.

7

In 2002, Dunn met with the City Council member for the Evergreen area, David Cortese, regarding Legacy's application for a general plan amendment. According to Dunn, Cortese wanted Legacy to work with the other owners of Evergreen campus industrial property, including Arcadia, KB Homes, Berg & Berg, IDS, and Evergreen Community College, to submit an application for a general plan amendment as a group. After several meetings, the property owners reached a consensus that they would participate together in seeking a general plan amendment.

In late 2002, Prevetti contacted Dunn to inform him that the participating property owners would have to fund the City's cost of amending the general plan and changing the zoning designation to allow residential uses of their Evergreen properties. In 2003, the participating property owners began hiring third-party consultants to do traffic studies and intersection engineering. Dunn explained that the participating property owners entered into a funding and reimbursement agreement with City because it was unprecedented for a group of property owners to act together. The participating property owners also wanted to ensure that their applications were expeditiously processed, by which they meant faster than normal. Before entering into a funding and reimbursement agreement with City, the participating property owners entered into a cooperation agreement between themselves.

### 2. The 2004 Funding and Reimbursement Agreement

The funding and reimbursement agreement dated February 11, 2004, (the 2004 funding and reimbursement agreement) was made between City and "YERBA BUENA OPCO, INC.,[3] a California corporation ('PARTICIPATING PROPERTY OWNERS')." The participating property owners were identified in the agreement as "property owners and potential developers in the EVERGREEN AREA," who "support the preparation of a

_____

[3] Dunn testified that "Yerba Buena Opco, Inc. was a mistake, so this document really should read Yerba Buena Opco, LLC. It was a mistake that wasn't caught and should have been."

8

community-based STRATEGY, related General Plan Amendments, an updated DEVELOPMENT POLICY, and related studies and environmental and other documents for the EVERGREEN AREA so that appropriate development within the EVERGREEN AREA may proceed and occur in a manner consistent with CITY'S General Plan . . . ." Dunn testified that the participating property owners included KB Homes, Legacy, Berg & Berg, Arcadia, and Evergreen Community College.[4]

The 2004 funding and reimbursement agreement stated that the agreement's purpose was "to provide a means for PARTICIPATING PROPERTY OWNERS to fund the costs of preparation of a community-based STRATEGY, related General Plan amendments, an updated DEVELOPMENT POLICY, and related studies, infrastructure funding mechanisms, and environmental and other documents analyzing the environmental impacts of the STRATEGY, all as they pertain to the EVERGREEN AREA (all such documents hereinafter are collectively referred to as the 'STRATEGY DOCUMENTS')."

The parties' obligations under the 2004 funding and reimbursement agreement were specified in the agreement, including the participating property owners' obligation to fund the total estimated cost for the preparation of the strategy documents in the amount of $8,847,740. Berg & Berg's share of that amount was 23.5 percent, according to the testimony of Carl Berg, the managing partner of Berg & Berg.

For its part, City was obligated, "[a]s consideration for PARTICIPATING PROPERTY OWNERS' agreement to fund the preparation of the STRATEGY DOCUMENTS, . . . to process the STRATEGY DOCUMENTS *in an expeditious manner* and, upon their completion, to bring the STRATEGY DOCUMENTS before CITY's Planning Commission and/or City Council for their consideration, as appropriate, all to the extent that adequate funding has been provided to CITY to cover the actual

---

[4] Evergreen Community College is not a party to the instant action.

9

costs incurred by CITY (including consultant costs) to perform and complete such work and tasks." (Italics added.)

The provision for an expedited process was very important to Berg because "timing is everything." Dunn believed that an expedited process would take 12 to 18 months, instead of the usual 24 months. Prevetti, who at the time of trial was City's assistant director of planning, was the lead staff person in City's planning department for the participating property owners' proposed Evergreen project. Prevetti's understanding was that the phrase "expeditious manner" in the 2004 funding and reimbursement agreement meant that "we would be taking reasonable means to complete our work."

The 2004 funding and reimbursement agreement further provided that the term of the agreement was February 11, 2004 to June 30, 2005, with a possible six-month extension.

### 3. The 2006 Funding and Reimbursement Agreement

The participating property owners believed that under the 2004 funding and reimbursement agreement they had contracted for the strategy documents to come before City's Planning Commission and then the City Council for a yes or no decision on the proposed zoning change for their Evergreen properties by June 30, 2005, which was the date the agreement terminated. However, by June 2005 the strategy documents were only partially completed.

City exercised its contractual right to extend the term of the 2004 funding and reimbursement agreement by six months. After the extension period expired, City staff continued to work on the Evergreen project. On June 27, 2006, the participating property owners entered into a second funding and reimbursement agreement (the 2006 funding and reimbursement agreement). Under the 2006 funding and reimbursement agreement, the participating property owners agreed that they would fund the remaining cost to prepare the strategy documents in the amount of $2,328,358. City again agreed "to process the STRATEGY DOCUMENTS in *an expeditious manner* and, upon their

10

completion, to bring the STRATEGY DOCUMENTS before CITY'S Planning Commission and/or City Council for their consideration," providing that adequate funding had been provided to complete the work. (Italics added.)

The 2006 funding and reimbursement agreement stated that the term of the agreement was June 27, 2006 to December 31, 2006. There was no provision for an extension.

### 4. City Council's Actions

In the fall of 2006 City's planning department supported the conversion of the participating property owners' Evergreen properties from campus industrial to residential. When the strategy documents were brought before the Planning Commission, the Commission voted in November 2006 to recommend to the City Council "either planned use or reconciled alternative."

During the City Council meeting held on December 12, 2006, the City Council upheld the environmental impact report and deferred a vote on the other strategy documents. The vote on the strategy documents was again deferred during the City Council's May 15, 2007 meeting. Berg believed that the City Council's deferrals had effectively killed "the deal." Berg filed a government claim against City on January 3, 2008, which stated that the name of the claimant was "Carl E. Berg, on behalf of Berg & Berg Enterprises, LLC" and sought "[r]estitution in the amount of $1,892,917 for monies paid under Reimbursement Agreement, so far as is known at this time. Other damages to be determined."

In December 2010 the City Council denied all general plan amendments because City was in the middle of a comprehensive general plan update and the City Council had concluded that the Evergreen sites were not needed for housing. At the time of trial, the zoning designation for the participating property owners' Evergreen properties remained campus industrial.

11

According to Prevetti, the City's cost for the staff time involved in processing the participating property owners' attempt to obtain an amendment of the general plan for their Evergreen properties was over $2.1 million. City ultimately reimbursed more than $619,000 in unused funds to the participating property owners.

**D. *Special Verdicts***

At the close of evidence, City made a motion for a directed verdict on grounds that included, among other things, City's contention that Berg & Berg could assert only its own government claim against City because there was "no evidence that any of the actual or purported members of Yerba Buena Opco, LLC filed a timely claim against the City, nor have they made any effort to comply with, or seek relief from, the Tort Claims Act." The trial court denied the motion for a directed verdict, stating: "The issue was thoroughly examined at the time of the second amended complaint. The Court found the defendant met the substantial compliance required by Government Code Section 910.10 (B) and 915 (D). In short, the claim provided enough information to make an adequate investigation of the merits. I think that's essentially what the law requires."

The jury returned special verdicts on May 31, 2012. The special verdict forms asked the jurors to make findings on the causes of action for breach of contract, money had and received, rescission/restitution, and promissory estoppel. Among other findings, the jurors found that City had not expeditiously processed the participating property owners' strategy documents and the amount of money that City should pay to Berg was $6,083,173 on all causes of action.

The jurors were also asked to make findings regarding assignment. The jurors found that Yerba Buena Opco had intended to transfer 100 percent of "its interest in the contract" to Berg & Berg.

12

Following the jury verdicts, a stipulation and order was filed on June 14, 2013, that dismissed with prejudice the first and second causes of action for writs of mandamus in the third amended petition and complaint.

### E.  *Statement of Decision and Judgment*

The trial court issued a statement of decision on July 15, 2013, on the issue of whether "the plaintiffs" were entitled to the equitable remedy of rescission under Civil Code section 1689.  Relying on the decision in *Hoopes v. Dolan* (2008) 168 Cal.App.4th 146 (*Hoopes*), the trial court determined where, as here, the legal issues were decided first, the court could not grant equitable relief that was inconsistent with the jury's verdicts.

The trial court therefore began its decision on the equitable issues by reviewing the jury verdicts.  The court noted that "[t]he jury returned verdicts in favor of Berg & Berg and against the City of San Jose on the breach of contract theory, the money had and received theory, the rescission theory, and also on the promissory estoppel theory.  The jury also found that Yerba Buena Opco, LLC had assigned 100% of its rights to Berg & Berg.  [¶]  The jury awarded $6,083,173 to the plaintiffs for damages relating to breach of contract, money had and received, and rescission."  (Fn. omitted.)

The trial court then stated that its decision was guided by the jury's factual findings, as follows.  "The heart of the rescission claim by Berg & Berg is that the City of San Jose promised 'expeditious processing.'  The expeditious processing was the consideration for the developer's willingness to put up $8.8 million, significantly more than the $300,000 to $400,000 in filing fees which the project would normally have cost. . . .  They were willing to put up $8.8 million to get this project to the City Council before its composition changed, betting that the then Council would go along with their plan and they would have a successful development.  From the developer's point of view, there was time urgency.  [¶]  Unfortunately, from Laurel Prevetti's point of view, as the Assistant Planning Director and person in charge of this project, 'expeditious' only meant

13

reasonable.  In short, the developers were paying $8.8 million for speed, and the City planners were working at what they viewed as a 'reasonable' tempo."

Based on its review of the special verdicts, the trial court determined that "the jury found that there was a failure of consideration in that the City did not deliver what the developers were paying for, i.e., an expeditious process.  The Court is satisfied that the evidence supports Civil Code § 1689(b)(2), (3) and (4)[5] grounds for rescission."  The trial court also determined that the appropriate remedy was a money judgment.  Based on these determinations, the trial court found "that the plaintiffs are entitled to rescission and to recover judgment against the City of San Jose in the amount of $6,083,173.00." (Fn. omitted.)

In a footnote, the trial court addressed City's request that Berg & Berg's recovery be capped at $1,892,917 since that was the amount that Berg & Berg had claimed as its loss in its government claim.  Since Government Code section 910, subdivision (f)[6] provides that where a government claim that exceeds $10,000 no dollar amount shall be included in the claim, the trial court rejected City's request on the ground that Berg & Berg's inclusion of $1,892,917 in its government claim "was surplusage, and that cannot serve as a cap."

---

[5] Civil Code section 1689, subdivision (b) provides in part:  "A party to a contract may rescind the contract in the following cases:  [¶]  (1) If the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party.  [¶]  (2) If the consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the party as to whom he rescinds.  [¶]  (3) If the consideration for the obligation of the rescinding party becomes entirely void from any cause.  [¶]  (4) If the consideration for the obligation of the rescinding party, before it is rendered to him, fails in a material respect from any cause."

[6] All statutory references hereafter are to the Government Code unless otherwise indicated.

14

On July 16, 2013, a judgment on jury verdict was entered that provided that Berg & Berg would recover "damages on the verdict in the sum of $6,083,173" and "prejudgment interest at the rate of 10% from the date of verdict in the amount of $683,314.20."

## F. *Motions for New Trial*

Berg & Berg moved for a new trial on the award of prejudgment interest, arguing that prejudgment interest should have been calculated from an accrual date of August 13, 2007, not the date of the jury verdict, and therefore it was entitled to prejudgment interest of $2,918,251.60. The trial court was not persuaded that the amount on which prejudgment interest could be awarded was certain as of August 13, 2007, and denied the motion during posttrial proceedings on September 6, 2013.

City filed a motion for new trial "as to the issue of Carl Berg's alleged standing to assert the rights of Yerba Buena Opco and/or its individual members or, in the alternative, to amend its judgment to recognize only the claim of Carl Berg." City argued that a new trial was warranted under Code of Civil Procedure section 657 because the trial court had made an error in law in determining that Berg & Berg could assert the claims of other participating property owners under the doctrine of substantial compliance. City relied on a recent California Supreme Court decision, *DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983 (*Dicampli-Mintz*) for the proposition that substantial compliance did not excuse strict compliance with the statutory government claims filing requirements. Since none of the other participating property owners had ever filed a government claim, City contended that "they had nothing to assign to Berg & Berg," which could only recover its proportionate share of the funds provided to City under the 2004 and 2006 funding and reimbursement agreements. The trial court determined that the decision in *DiCampli-Mintz* was inapplicable and denied the motion during posttrial proceedings on September 6, 2013.

15

## III. CITY'S APPEAL

City filed a timely notice of appeal from the judgment. On appeal, City contends that the trial court's orders with respect to City's demurrer, motions in limine, motion for directed verdict, and motion for new trial should be reversed; the jury verdicts and the damages award in the statement of decision should be vacated; and the judgment should be reversed.

According to City, reversal is required due to several trial court errors, including (1) allowing Berg & Berg to assert claims against City on behalf of the other participating property owners who had not filed government claims; (2) allowing Berg & Berg to litigate the causes of action for money had and received and rescission/restitution although City had immunity from those causes of action under section 815, subdivision (a); (3) allowing damages to be awarded against City although Berg & Berg had waived damages in the 2004 and 2006 funding and reimbursement agreements; (4) making inconsistent rulings as to whether the cause of action for rescission/restitution was legal or equitable; and (5) awarding prejudgment interest at the rate of 10 percent instead of 7 percent.

We will begin our discussion with the issue of whether the causes of action for money had and received and rescission/restitution are barred by government immunity under section 815.

### A. *Money Had and Received and Rescission/Restitution*

City contends that the causes of action for money had and received (common count) and rescission/restitution are barred under section 815 because a quasi-contract claim cannot be asserted against a public entity. City also contends that it may raise this

16

issue for the first time on appeal because a government immunity defense may be raised at any time.[7]

Berg & Berg responds that City is not immune because Berg & Berg's claims are based on contract. In addition, Berg & Berg points out that City did not argue below that it is immune from the contract claims.

We agree with City that it may raise the issue of government immunity for the first time on appeal since "governmental immunity from liability is a jurisdictional matter that can be raised for the first time on appellate review. [Citation.]" (*Inland Empire Health Plan v. Superior Court* (2003) 108 Cal.App.4th 588, 592.) However, we agree with Berg & Berg that section 815 does not immunize City from claims based on contract.

"The California Tort Claims Act[8] sets forth the statutory scheme relating to contract and tort liabilities of public entities." (*Janis v. California State Lottery Com.* (1998) 68 Cal.App.4th 824, 830 (*Janis*).) Tort liability is generally governed by section 815, subdivision (a), which provides in part: "Except as otherwise provided by statute: [¶] A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." Thus, under section 815, subdivision (a), "there is no common law tort liability for public entities in California; instead, such liability must be based on statute." (*Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 897.)

Contract liability is generally governed by section 814, which provides: "Nothing in this part affects liability based on contract or the right to obtain relief other than money

---

[7] We observe that City has not raised any issue with respect to the special verdict findings that City was liable under theories of breach of contract and promissory estoppel.

[8] The California Supreme Court has adopted the practice of "referring to the claims statutes as the 'Government Claims Act,' to avoid the confusion engendered by the informal short title 'Tort Claims Act.'" (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 734.) We will follow the practice of our Supreme Court.

17

or damages against a public entity or public employee." The California Supreme Court has instructed that "[s]ection 814 simply reaffirms the longstanding rule that governmental immunity does not encompass contractual liability. [Citation.]" (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 741, fn. omitted.)

Thus, "the immunity provisions of the [Government Claims] Act are only concerned with shielding public entities from having to pay money damages for torts. [Citation.] Section 814 explicitly provides that liability based on contract or the right to obtain relief other than money damages is unaffected by the Act." (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 867.)

We are not convinced by City's argument that it has immunity under section 815 because Berg & Berg made quasi-contract claims for money had and received and rescission/restitution that cannot be asserted against a public entity. This court has stated that "rescission stands as a contract remedy. [Citations.]" (*People ex. rel. Kennedy v. Beaumont Investment, Ltd.* (2003) 111 Cal.App.4th 102, 133 (*Beaumont*).) Moreover, the California Supreme Court has instructed that " '[r]escission upon failure of consideration includes cases where there is a breach [of contract] (so that rescission is a mode of obtaining *restitutionary damages* as an alternative to compensatory damages) . . .' " (*Runyan v. Pacific Air Industries, Inc.* (1970) 2 Cal.3d 304, 317, fn. 16 (*Runyan*).) Thus, "[i]n an appropriate contract action, rescission may be followed by restitution. (Civ. Code, § 1692 . . . .)"**9** (*Beaumont*, *supra*, at p. 133.)

The decision in *Arthur L. Sachs, Inc. v. City of Oceanside* (1984) 151 Cal.App.3d 315 (*Sachs*), is instructive regarding government immunity for claims of rescission and

---

**9** Civil Code section 1692 provides in part: "When a contract has been rescinded in whole or in part, any party to the contract may seek relief based upon such rescission by (a) bringing an action to recover any money or thing owing to him by any other party to the contract as a consequence of such rescission or for any other relief to which he may be entitled under the circumstances or (b) asserting such rescission by way of defense or cross-complaint."

18

restitution. In that case, the plaintiff filed a complaint seeking rescission of a real estate purchase agreement with the Oceanside Unified School District on the basis of fraud. (*Id*. at p. 319.) The *Sachs* court rejected the school district's contention that it was immune from liability for the alleged fraud, noting that the complaint's prayer sought rescission and restitution. (*Id*. at pp. 322-323.) The court determined that "[t]hese pleadings, on their face, present a cause of action based on contract" and pursuant to section 814 the school district was not immune. (*Sachs, supra,* at p. 323.)

Berg & Berg's cause of action for rescission/restitution is similarly based on contract, since Berg & Berg asserted in the complaint that the 2004 and 2006 funding and reimbursement agreements must be rescinded due to mistake and failure of consideration, and sought restitution of the funds paid pursuant to the agreements in "an amount up to $8 million." Therefore, Berg's cause of action for rescission/restitution is not barred by the government immunity provided by section 815.

City relies on the decision in *Janis*, *supra*, 68 Cal.App.4th 824 for a contrary result, but that decision does not support City's argument that Berg & Berg's claims are based on quasi-contract. In *Janis*, the appellate court stated: "Whether a governmental tort immunity applies does not depend on the form of the pleading, or relief sought. Instead, we examine the nature of the right sued upon; if based on a breach of promise it is contractual; if based on a noncontractual duty it is tortious. [Citation.]" (*Id.* at p. 830.)

The claim in *Janis* involved the plaintiff's allegation that the California State Lottery had misled Keno players regarding the legality of the Keno game. (*Janis*, *supra*, 68 Cal.App.4th at p. 830.) The *Janis* court ruled that the plaintiff had made a fraud claim, not a breach of contract claim, and therefore the California State Lottery was immune from liability. (*Id.* at pp. 830-831.) The decision in *Janis* is therefore distinguishable from the present case, in which it is clear that Berg & Berg's claims are based on the alleged breach of two contracts with City: the 2004 and 2006 funding and reimbursement agreements.

City's reliance on the decision in *Katsura v. City of San Benaventura* (2007) 155 Cal.App.4th 104 (*Katsura*) is also unhelpful. In *Katsura*, the plaintiff sought payment for work as an engineering consultant that was not authorized by his contract with the defendant city. (*Id*. at pp. 106-107.) The *Katsura* court ruled that the plaintiff could not obtain recovery under a quasi-contract theory because a city is not liable for agreements that do not comply with the applicable municipal code provisions. (*Id*. at pp. 109-110.) In contrast, in the present case there was no showing that the 2004 and 2006 funding agreements constituted quasi-contracts because the agreements did not comply with the applicable municipal code provisions.

As to the common count for money had and received, our Supreme Court has explained that " '[t]he common count is a general pleading which seeks recovery of money without specifying the nature of the claim.' " (*Title Ins. Co. v. State Bd. of Equalization* (1992) 4 Cal.4th 715, 731.) " 'If money alone has been transferred by the rescinding party, upon the rescission the law implies a promise to return it, which becomes the basis for a common-law action of money had and received. [Citations.]' " (*Philpott v. Superior Court* (1934) 1 Cal.2d 512, 524-525 (*Philpott*); see also *Rutherford Holdings, LLC v. Plaza Del Rey* (2014) 223 Cal.App.4th 221, 230 [action on express contract for money had and received].) Since in the present case the common count for money had and received is based on contract, as is the cause of action for rescission/restitution, the common count for money had and received is not barred by the governmental tort immunity provided by section 815.

**B.** *Damages Waiver*

Having determined that government tort immunity provided by section 815 did not bar Berg & Berg's causes of action for rescission/restitution and money had and received, we next consider City's contention that the trial court improperly awarded damages despite Berg & Berg's waiver of damages in the 2004 and 2006 funding and reimbursement agreements.

20

Regarding damages, section 12.A of the 2004 funding and reimbursement agreement provides in part that "in no event shall CITY be liable in damages for any breach or violation of this AGREEMENT. Nothing in this SECTION shall preclude PARTICIPATING PROPERTY OWNERS from enforcing their rights to any sums CITY is obligated to return to PARTICIPATING PROPERTY OWNERS under this AGREEMENT." The damages clause in section 12.A of the 2006 funding and reimbursement agreement is identical to the damages clause in the 2004 funding and reimbursement.

According to City, the trial court's September 8, 2011 order granting City's motion for summary adjudication of the cause of action for declaratory relief determined that " '[s]ection 12.A is a proper contractual waiver.' " The order states: "The seventh cause of action for declaratory relief seeks a declaration that section 12.A of the Reimbursement Agreements is illegal and unenforceable under Civil Code section 1668 as an unlawful exculpatory clause. . . . Defendants satisfy their burden of establishing no triable issue, as: (1) [Civil Code] section 1668[10] does not apply to section 12.A of the Reimbursement Agreement; and (2) section 12.A is a proper contractual waiver. [Citation.]" City therefore contends that the trial court erred by "permitt[ing] the jury to determine monetary damages as to each of the four causes of action: breach of contract, money had and received, rescission/restitution, and promissory estoppel."

Berg & Berg responds that it sought restitution of the funds that the participating property owners had paid City pursuant the 2004 and 2006 funding and reimbursement agreements, not damages, and therefore the damages waiver in section 12 of the agreements is inapplicable and restitution was properly awarded by the jury.

---

**10** Civil Code section 1668 provides: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

Additionally, Berg & Berg argues that the remedy of restitution is different than an award of money damages.

The general rule is that "[w]ith respect to claims for breach of contract, limitation of liability clauses are enforceable unless they are unconscionable, that is, the improper result of unequal bargaining power or contrary to public policy. [Citation.]" (*Food Safety Net Services v. Eco Safe Systems USA, Inc.* (2012) 209 Cal.App.4th 1118, 1126.) Here, the damages waiver in section 12.A of the 2004 and 2006 funding and reimbursement agreements expressly provides that the waiver limits City's liability for damages arising from *breach of contract,* not rescission, since it states: "in no event shall CITY be liable in damages for any breach or violation of this AGREEMENT."

An award of compensatory damages for breach of contract is a different remedy than restitution of consideration. Civil Code section 1692 provides that where a contract has been rescinded, restitution may include recovery of the consideration paid by the plaintiff: "The aggrieved party shall be awarded complete relief, including restitution of benefits, if any, conferred by him as a result of the transaction and any consequential damages to which he is entitled; but such relief shall not include duplicate or inconsistent items of recovery." Thus, "[r]escission is intended to restore the parties as nearly as possible to their former positions and ' "to bring about substantial justice by adjusting the equities between the parties" despite the fact that "the status quo cannot be exactly reproduced." ' [Citations.]" (*Sharabianlou v. Karp* (2010) 181 Cal.App.4th 1133, 1144.)

In other words, as our Supreme Court has stated: "The award given in an action for damages compensates the party not in default for the loss of his [or her] 'expectational interest'—the benefit of his [or her] bargain which full performance would have brought. [Citation.] Relief given in rescission cases—restitution and in some cases consequential damages—puts the rescinding party in the *status quo ante*, returning him [or her] to his [or her] economic position before he [or she] entered the contract." (*Runyan*, *supra*, 2 Cal.3d at p. 316, fn. 15.)

22

In the present case, the trial court's statement of decision indicates that the court entered judgment in the amount of $683,314.20 based upon the court's ruling that the plaintiffs were entitled to restitution of consideration as a remedy for rescission of the funding and reimbursement agreements. The court stated in its statement of decision: "The Court believes the jury found that there was a failure of consideration in that the City did not deliver what the developers were paying for, i.e., an expeditious process. The Court is satisfied that the evidence supports Civil Code § 1689(b)(2), (3) and (4) grounds for rescission. [¶] Although rescission is an equitable remedy, and the Court may fashion a judgment that meets equitable requirements, up to this point, the Court has received no evidence or argument which would suggest that anything other than a money judgment is sought or appropriate. ... [¶] ... [¶] The Court finds that the plaintiffs are entitled to rescission and to recover judgment against the City of San Jose in the amount of $6,083,173.00." (Fns. omitted.)

In addition, the record reflects that the amount of $6,083,173 was awarded as restitution by the trial court based upon the jury's findings on the cause of action for rescission/restitution. In special verdict form No. 3 on rescission/restitution, the jurors answered the following questions:

"1. Did Yerba Buena Opco and Defendant the City of San Jose ('Defendant') enter into Funding Agreements? [Yes]

"If your answer to question 1 is yes, then answer question 2. [¶] ... [¶]

"2. Did Yerba Buena Opco pay money in reliance upon the Funding Agreements? "[Yes]

"If your answer to question 2 is yes, then answer question 3. [¶] ... [¶]

"3. Did Yerba Buena Opco waive its right to have the City of San Jose expeditiously process the Funding Agreement documents?

"[No]

23

"If your answer to any part of question 3 is yes, then answer question 4. [¶] . . . [¶]

"4. What amount *should be returned to Berg*? $[6,083.173.00]." (Italics added.)

The trial court therefore entered judgment in the amount of $6,083,173 as restitution of consideration, based upon the jury's finding that $6,083,173 should be returned to the participating property owners from the funds that they had paid City as consideration for the 2004 and 2006 funding and reimbursement agreements. We therefore determine that the damages waiver in section 12.A of the 2004 and 2006 funding and reimbursement agreements did not bar Berg & Berg from recovering the consideration it had paid City as a restitutionary remedy for rescission of the agreements.

## C. *Inconsistent Rulings*

City contends that the trial court erred by making inconsistent rulings as to whether the cause of action for rescission/restitution was legal or equitable. According to City, "[i]f the restitution cause of action were in equity, the Court should not have allowed the jury to determine the claim. If it was at law, the plaintiff waived the right to damages . . . ."

Berg & Berg rejects City's contention, asserting that "the [rescission] issue was properly submitted to the jury as a question grounded in law and the jury awarded Berg restitution. At City's request, the court then reconsidered the rescission claim as an equitable one and, guided by principles of deference, reached the same conclusion as the jury." Berg & Berg further argues that City has failed to show prejudice from the allegedly inconsistent rulings.

Regarding the right to a jury trial, the California Supreme Court has stated: "The right to a jury trial is guaranteed by our Constitution. (Cal. Const., art. I, § 16.) . . . As a general proposition, '[T]he jury trial is a matter of right in a civil action at law, but not in equity.' [Citations.] [¶] . . . ' "If the action has to deal with ordinary common-law rights cognizable in courts of law, it is to that extent an action at law. In determining

24

whether the action was one triable by a jury at common law, the court is not bound by the form of the action but rather by the nature of the rights involved and the facts of the particular case—the *gist* of the action. A jury trial must be granted where the *gist* of the action is legal, where the action is in reality cognizable at law." ' [Citation.] On the other hand, if the action is essentially one in equity and the relief sought 'depends upon the application of equitable doctrines,' the parties are not entitled to a jury trial. [Citations.]" (*C & K Engineering Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1, 8-9.)

Appellate courts have variously held that a cause of action for rescission is legal or equitable. Some courts have simply stated that an action for rescission is equitable. (See, e.g., *Nelson v. Pearson Ford Co.* (2010) 186 Cal.App.4th 983, 1018; *Padula v. Superior Court* (1965) 235 Cal.App.2d 567, 570.) In *Nmsbpcsldhb v. County of Fresno* (2007) 152 Cal.App.4th 954, the court more specifically determined that a rescission action that seeks recovery of something other than the consideration paid is an equitable action and in such cases the plaintiff is not entitled to a jury. (*Id*. at pp. 956, 963.)

However, our Supreme Court noted in *Runyan* that the Law Revision Commission had reported, with respect to the addition of section 1692 to the Civil Code in 1961, that under the new law " 'all such actions will be to *enforce* a rescission, the right of the parties to a jury and the court in which the action must be brought will be determined by the nature of the substantive relief requested and not by the form of the complaint. For example, if a bare money judgment is sought, a justice court will have jurisdiction in appropriate cases, and the plaintiff may not convert the action into an equity action and thus deprive the justice court of jurisdiction merely by a prayer for rescission.' " (*Runyan*, *supra*, 2 Cal.3d at p. 313; see also *Paularena v. Superior Court* (1965) 231 Cal.App.2d 906, 914 [where gist of action for rescission of a contract is the recovery of a money judgment, the action is legal and the plaintiffs are entitled to a jury trial]; *Lectrodryer v. SeoulBank* (2000) 77 Cal.App.4th 723, 728 [same].)

25

However, we need not decide whether the trial court erred in determining that Berg & Berg was entitled to a jury trial on the cause of action for rescission of the 2004 and 2006 funding and reimbursement agreements, since we agree with Berg & Berg that City has not made the requisite showing of prejudice.

"The erroneous grant of a jury trial or the improper submission of an issue to the jury is nothing more than a nonconstitutional procedural error." (*Beasley v. Wells Fargo Bank* (1991) 235 Cal.App.3d 1383, 1396.) A judgment cannot be set aside for a procedural error "unless the error resulted in a miscarriage of justice." (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 801 (*Cassim*).) A miscarriage of justice occurs when the error was prejudicial, meaning that " 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' [Citation.]" (*Id.* at p. 800.)

City therefore had the burden of showing that the trial court's submission of the rescission cause of action to the jury was prejudicial because City would have received a more favorable verdict from the trial court on the rescission cause of action. (*Cassim*, *supra*, 33 Cal.4th at p. 802.) City has not attempted to meet this burden. In any event, we see no potential prejudice to City as result of the procedure followed by the trial court.

The decision in *Hoopes*, *supra*, 168 Cal.App.4th 146 is instructive on this point. In *Hoopes*, the plaintiff brought an action against his landlord and another tenant regarding parking rights. (*Id.* at p. 150.) The defendants brought a motion to bifurcate the trial and hold a court trial first on the defendants' equitable estoppel defense. The trial court denied the motion and held a jury trial first on the legal claims of breach of contract, trespass and fraud. After the jury found in the plaintiff's favor, the trial court entered judgment for the defendants on their equitable estoppel defense, which the court determined by rejecting the jury's findings of fact and making its own evaluation of the evidence. (*Id.* at p. 150.)

26

The plaintiff in *Hoopes* appealed and appellate court determined that "jury trial on the breach of contract and other claims was a matter of right and the issues of act were properly submitted to the jury [Citation.]" (*Hoopes*, *supra*, 168 Cal.App.4th at p. 160.) However, the appellate court also determined that the trial court "erred in disregarding the jury's verdict when fashioning equitable relief." (*Id*. at p. 159.) The appellate court explained that when " 'the legal issues are tried first, the judge cannot ignore the jury's verdict and grant equitable relief inconsistent with the jury's findings.' " (*Ibid*.)

In this case, as in *Hoopes*, the trial court properly submitted issues of fact to the jury on the breach of contract cause of action. (*Hoopes*, *supra*, 168 Cal.App.4th 160; see *Raedeke v. Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665, 671 [breach of contract is an action at law in which a right to jury trial ordinarily exists].) Issues of fact were also properly submitted to the jury on the common count for money had and received. (See *Philpott*, *supra*, 1 Cal.2d at pp. 524-525 [common count for money had and received is an action at law].)

In the special verdict on breach of contract, the jury found that City had failed "to do something the contract required it to do." In the special verdict on money had and received, the jury found that City had received money "that was intended to be used for the benefit of the Participating Property Owners" and had not "returned the money paid by the Participating Property Owners and not used for their benefit." The jurors also found in their special verdict on money had and received that the amount of money owed to Berg & Berg was $6,083,173.

The trial court, having determined that rescission was an action in equity, did not err in considering itself bound by the jury's findings on the two legal causes of action. (See *Hoopes*, *supra*, 168 Cal.App.4th at p. 159.) The trial court then determined that the equitable remedy for rescission was a money judgment in the amount of $6,083,173, which was the amount that the jury had found in its special verdict should be returned to Berg & Berg.

27

In light of the trial court's appropriate submission of the legal causes of action for breach of contract and money had and received to the jury, the binding effect of the jury's factual findings (*Hoopes*, *supra*, 168 Cal.App.4th at pp. 159-160), and the trial court's rulings in conformity with the jury's findings, we do not believe that City can show that it would have received a more favorable verdict on the rescission cause of action absent the jury's findings on rescission. We therefore find no merit in City's contention that the trial court committed reversible error by making inconsistent rulings as to whether the cause of action for rescission/restitution was equitable or legal.

We next consider the issue of whether the trial court erred in denying City's motion for new trial.

### D. *City's Motion for New Trial*

City filed a motion for new trial "as to the issue of Carl Berg's alleged standing to assert the rights of Yerba Buena Opco and/or its individual members or, in the alternative, to amend its judgment to recognize only the claim of Carl Berg." City argued that a new trial was warranted under Code of Civil Procedure section 657 because the trial court had made an error in law in determining that Berg & Berg could assert the claims of other participating property owners under the doctrine of substantial compliance.

City relied on a recent California Supreme Court decision, *DiCampli-Mintz*, *supra*, 55 Cal.4th 983 for the proposition that substantial compliance did not excuse strict compliance with the statutory government claims filing requirements. Since none of the other participating property owners had ever filed a government claim, City contended that "they had nothing to assign to Berg & Berg," which could only recover its proportionate share of the funds provided to City under the 2004 and 2006 funding and reimbursement agreements.

The trial court determined that the decision in *DiCampli-Mintz* was inapplicable and denied the motion during posttrial proceedings on September 6, 2013. In so ruling,

28

the trial court stated: "I'll deny your motion for new trial. I'm denying it primarily because I think your best argument is the new case [*DiCampli-Mintz*], but it seemed to me the new case focused only on that one Government Code provision, [section] 915. And while the language certainly can be interpreted to suggest that the Supreme Court is . . . going to take a more strict approach to government tort claims, I don't see that clearly stated. I think there is an implication there that at least I need the Supreme Court to be more explicit and say this is where we're going generally."

### 1. The Parties' Contentions

On appeal, City argues that the trial court erred in denying City's motion for new trial because under *DiCampli-Mintz* strict compliance with the government claims statutes is required, including the requirement that all claimants be identified. Since neither Yerba Buena Opco nor any other participating property owner filed a government claim, City maintains that this action is limited to Berg & Berg's own claim and, contrary to the trial court's rulings, the doctrine of substantial compliance does not apply and Berg & Berg's claim cannot be expanded to include the claims of the other owners.

City emphasizes that the evidence shows that in January 3, 2008, Carl Berg presented a government claim on behalf of Berg & Berg only, and there was no attempt to assign the other property owners' claims to Berg & Berg until two years later, in 2010. City also contends that the trial court's error of law in allowing Berg & Berg to assert the claims of other participating property owners was prejudicial, because otherwise the plaintiff's trial evidence on liability would have been limited to Carl Berg's testimony and the verdict could not have exceeded the amount that Berg & Berg paid to City, which was $1,892,000.

Berg & Berg responds that the trial court properly rejected City's argument on five different occasions, including the order denying City's motion for new trial, because Berg & Berg was entitled to pursue its own claim plus the claims that had been assigned to it pursuant to section 14 of the 2004 and 2006 funding and reimbursement agreements.

29

According to Berg & Berg, the contents of its claim substantially complied with section 910[11] and thereby provided City with sufficient information to investigate the claim and discover that Berg & Berg was acting in a representative capacity as the assignee to recover all of the money paid to City pursuant to the funding and reimbursement agreements. Berg & Berg further argues that since substantial evidence supports the jury's findings that Yerba Buena Opco had assigned its interest to Berg & Berg, the alleged trial court error in allowing Berg & Berg to assert the claims of Yerba Buena Opco was not prejudicial.

We will begin our evaluation of the parties' contentions with the applicable standard of review.

### 2. Standard of Review

"The authority of a trial court in this state to grant a new trial is established and circumscribed by statute. [Citation.] [Code of Civil Procedure] Section 657 sets out seven grounds for such a motion: (1) 'Irregularity in the proceedings'; (2) 'Misconduct of the jury'; (3) 'Accident or surprise'; (4) 'Newly discovered evidence'; (5) 'Excessive or inadequate damages'; (6) 'Insufficiency of the evidence [. . . or the verdict . . . is against

---

[11] Section 910 provides: "A claim shall be presented by the claimant or by a person acting on his or her behalf and shall show all of the following: [¶] (a) The name and post office address of the claimant. [¶] (b) The post office address to which the person presenting the claim desires notices to be sent. [¶] (c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted. [¶] (d) A general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim. [¶] (e) The name or names of the public employee or employees causing the injury, damage, or loss, if known. [¶] (f) The amount claimed if it totals less than ten thousand dollars ($10,000) as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed. If the amount claimed exceeds ten thousand dollars ($10,000), no dollar amount shall be included in the claim. However, it shall indicate whether the claim would be a limited civil case."

the law]'; and (7) 'Error in law [occurring at the trial and excepted to by the party making the application].' " (*Oakland Raiders v. National Football League* (2007) 41 Cal.4th 624, 633.)

An order denying a motion for new trial *"may be reviewed on appeal from the underlying judgment. (Code Civ. Proc., § 906; [citation].)" (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 18.) We apply the standard of review stated by the California Supreme Court in *City of Los Angeles v. Decker* (1977) 18 Cal.3d 860: "We are mindful of the fact that a trial judge is accorded a wide discretion in ruling on a motion for new trial and that the exercise of this discretion is given great deference on appeal. [Citations.] However, we are also mindful of the rule that on an appeal from the judgment it is our duty to review all rulings and proceedings involving the merits or affecting the judgment as substantially affecting the rights of a party (see Code Civ. Proc., § 906), including an order denying a new trial. In our review of such order *denying* a new trial, as distinguished from an order *granting* a new trial, we must fulfill our obligation of reviewing the entire record, including the evidence, so as to make an independent determination as to whether the error was prejudicial. [Citations.]" (*City of Los Angeles v. Decker*, *supra*, at pp. 871-872.)

Since City contends that the trial court should have granted its motion for new trial due to an error of law occurring at the trial to which City objected, our review of that legal issue is de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 (*Aguilar*).) "There is no discretion to adopt a reading, or make an application, of decisional law that is inconsistent with the law itself. [Citation.] Any such reading or application must necessarily be deemed an abuse. [Citation.]" (*Ibid.*) Thus, " 'a discretionary order based on an application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion and is subject to reversal. [Citation.]' " (*David v. Hernandez* (2014) 226 Cal.App.4th 578, 592.)

31

Applying these standards of review, we will independently determine whether the trial court made an error of law at the trial by allowing Berg & Berg to assert the claims of other participating property owners against City arising from the 2004 and 2006 funding and reimbursement agreements, although only Berg & Berg had filed a government claim with City, and whether the trial court therefore abused its discretion in denying City's motion for new trial.  We will begin our independent review with a brief overview of the government claim filing requirements.

### 3.  Government Claim Filing Requirements

In *DiCampli-Mintz*, the California Supreme Court outlined the filing requirements set forth in the Government Claims Act:  "Suits for money or damages filed against a public entity are regulated by statutes contained in division 3.6 of the Government Code, commonly referred to as the Government Claims Act.  We have previously noted that '[s]ection 905 requires the presentation of "all claims for money or damages against local public entities," subject to exceptions not relevant here.  Claims for personal injury and property damage must be presented within six months after accrual; all other claims must be presented within a year.  (§ 911.2.)  "[N]o suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon . . . or has been deemed to have been rejected . . . ."  (§ 945.4.)  "Thus, under these statutes, failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity."  [Citation.]'  [Citation.]" (*DiCampli-Mintz*, *supra*, 55 Cal.4th at pp. 989-990.)

The *DiCampli-Mintz* decision also addressed the purpose of the Government Claims Act:  " '[T]he purpose of the claims statutes is not to prevent surprise, but "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation.  [Citations.]  It is well-settled that claims statutes must be satisfied even in face of the public entity's

actual knowledge of the circumstances surrounding the claim." [Citation.] The claims statutes also "enable the public entity to engage in fiscal planning for potential liabilities and to avoid similar liabilities in the future." [Citations.]' [¶] Moreover, the intent of the Government Claims Act is 'not to expand the rights of plaintiffs against government entities. Rather, the intent of the act is to confine potential governmental liability to rigidly delineated circumstances.' [Citations.]" (*DiCampli-Mintz*, *supra*, 55 Cal.4th at p. 991.)

### 4. Analysis

We first address Berg & Berg's key contention that it had standing to seek recovery of the funds paid by the other participating property owners under the 2004 and 2006 funding agreements as their assignee. We will then address the issue of whether the trial court properly determined under the doctrine of substantial compliance that Berg & Berg's filing of its own government claim was sufficient to allow Berg & Berg to assert the claims of other participating property owners.

### *Assignment*

Berg & Berg contends that it was entitled to seek recovery of all of the funds paid to City by the other participating property owners as the assignee of their rights of action against City for reimbursement of funds paid under the 2004 and 2006 funding and reimbursement agreements. Having carefully reviewed the trial evidence, we find no merit in this contention since we determine that Berg & Berg did not prove that it had been assigned the government claims of the other participating property owners against City at the time Berg & Berg filed its government claim on January 3, 2008.

In general, "[a]n assignment carries with it all the rights of the assignor. [Citations.] 'The assignment merely transfers the interest of the assignor. The assignee "stands in the shoes" of the assignor, taking his [or her] rights and remedies, subject to any defenses which the obligor has against the assignor prior to notice of the assignment.' [Citation.] Once a claim has been assigned, the assignee is the owner and has the right to

sue on it.  [Citations.]"  (*Johnson v. County of Fresno* (2003) 111 Cal.App.4th 1087, 1096, italics omitted.)

The California Supreme Court has instructed that "[t]he burden of proving an assignment falls upon the party asserting rights thereunder [citations].  In an action by an assignee to enforce an assigned right, the evidence must not only be sufficient to establish the fact of assignment when that fact is in issue [citation] but the measure of sufficiency requires that the evidence of assignment be clear and positive to protect an obligor from any further claim by the primary obligee [citation]."  (*Cockerell v. Title Ins. & Trust Co.* (1954) 42 Cal.2d 284, 292 (*Cockerell*).)

In this case, the trial evidence relating to assignment was as follows.  Section 14 of the 2004 funding and reimbursement agreement states:  "A.  PARTICIPATING PROPERTY OWNERS *may*, with the prior written consent of CITY, assign its rights and obligations under this AGREEMENT to another financially solvent entity that is clearly capable of and has the desire to fulfill the obligations of PARTICIPATING PROPERTY OWNERS under this AGREEMENT.  Prior to the effective date of *any such assignment*, PARTICIPATING PROPERTY OWNERS shall deliver or cause to be delivered to CITY an agreement duly executed by the proposed assignee under which the assignee agrees to the satisfaction of CITY to assume, be bound by and timely fulfill all of PARTICIPATING PROPERTY OWNERS' obligations under this AGREEMENT.  [¶] B.  The above notwithstanding, CITY agrees that its consent shall not be required in the event that this AGREEMENT is assigned to one or more of the following:  [¶] Berg & Berg Enterprises, LLC. . . "  (Italics added.)

The 2006 funding and reimbursement agreement included an assignment clause at section 14 that was identical to the assignment clause in section 14 of the 2004 funding and reimbursement agreement.  Both section 14 assignment clauses provided only that the participating property owners' "*may*" assign their rights and obligations under the funding and reimbursement agreements to Berg & Berg.

Thus, there was no language in either the 2004 or the 2006 funding and reimbursement agreement that indicated that the participating property owners had actually assigned any rights and obligations to Berg & Berg.

After the 2006 funding and reimbursement agreement expired, Carl Berg sent a letter to Dunn, care of "Yerba Buena Opco, Inc." dated August 8, 2007. Berg & Berg has contended that the August 8, 2007 letter constitutes an assignment. We disagree.

The August 8, 2007 letter states in its entirety, "Pursuant to Section 14.B of the Funding and Reimbursement Agreement by and between the City of San Jose and Certain Evergreen Property Owners Regarding the Evergreen East Hills Vision Strategy and Related Environmental Documents, dated June 27, 2006 ('Agreement'), I request that Yerba Buena Opco, Inc. name Berg & Berg Enterprises, LLC as one of the 'PARTICPATING PROPERTY OWNERS' as defined by the Agreement." Dunn signed the paragraph under Berg's signature on the letter, which states: "Yerba Buena Opco, Inc., hereby names and recognizes Berg & Berg Enterprises, LLC as a 'PARTICIPATING PROPERTY OWNER' as defined by the Agreement."

Having reviewed the August 8, 2007 letter, we determine that the letter does not contain any language indicating an effective assignment of rights. "While no particular form of assignment is necessary, the assignment, to be effectual, must be a manifestation to another person by the owner of the right indicating his [or her] intention to transfer, without further action or manifestation of intention, the right to such other person, or to a third person [citations]." (*Cockerell*, *supra*, 42 Cal.2d at p. 291.) Thus, " '[i]t is sufficient if the assignor has, in some fashion, manifested an intention to make a present transfer of his rights to the assignee.' [Citations.]" (*Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 1002 (*Amalgamated Transit*).)

In addition, "the assignment must describe the subject matter of the assignment with sufficient particularity to identify the rights assigned. [Citation.]" (*Mission Valley East, Inc. v. County of Kern* (1981) 120 Cal.App.3d 89, 96-97; see also *Cobb v.*

35

*San Francisco Residential Rent Stabilization & Arbitration Bd.* (2002) 98 Cal.App.4th 345, 352-353 [essential that owner of right manifest an intention to transfer the right].)

Here, the August 8, 2007 letter requests only that Berg & Berg be named as a participating property owner under the 2006 funding and reimbursement agreement, and includes Yerba Buena Opco's agreement to the request. Dunn signed the paragraph under Berg's signature on the letter, which states that Yerba Buena Opco names and recognizes Berg & Berg as a participating property owner as defined in the funding and reimbursement agreements. Thus, there is no language in the August 8, 2007 letter that describes the subject matter of an assignment or manifests an intention by an owner of a right to transfer that right to another person or entity. More specifically, there is no language in the August 8, 2007 letter indicating that Yerba Bueno Opco or any other participating property owner intended to transfer their rights and obligations under the funding and reimbursement agreements, including their government claims, to Berg & Berg. We therefore determine that the August 8, 2007 letter does not constitute an assignment.

At oral argument, Berg & Berg argued that the assignment of the other participating property owners' rights and obligations under the funding and reimbursement agreements was shown by reading the August 8, 2007 letter together with the section 14 assignment clause. We are not convinced by this argument. Even when the letter and the assignment clause are read together, there is no language that could be read to manifest an intention by Yerba Buena Opco or any other participating property owner to make a *present* transfer of rights under the funding and reimbursement agreements to Berg & Berg. (See *Amalgamated Transit*, *supra*, 46 Cal.4th at p. 1002.)

Thus, we determine that in this case the evidence of assignment was not "clear and positive," as our Supreme Court has required for an effective assignment. (See *Cockerell*, *supra*, 42 Cal.2d. at p. 292.) To the contrary, the evidence shows that the other participating property owners had not assigned their government claims or any

36

other rights under the funding and reimbursement agreements to Berg & Berg at the time Berg & Berg filed its government claim against City on January 3, 2008, seeking "[r]estitution in the amount of $1,892,917 for monies paid under Reimbursement Agreement, so far as is known at this time." More than two years later, Yerba Buena Opco and Berg & Berg executed a document entitled "SUPPLEMENTAL ASSIGNMENT" that was dated February 2010. The record reflects that the February 2010 "supplement assignment" was the first attempt to assign the other participating property owners' rights to Berg & Berg.

In pertinent part, the "supplemental assignment" states: "On August 8, 2007, Yerba Buena and Berg & Berg entered into the Letter Agreement. [¶] . . . On August 13, 2007, Berg & Berg filed a lawsuit against the City and the San Jose City Council . . . [¶] **NOW, THEREFORE,** to supplement the Letter Agreement, Yerba Buena and Berg & Berg agree as follows: [¶] AGREEMENT [¶] 1. Pursuant to Section 14(B) of the Funding Agreement, Yerba Buena assigns to Berg & Berg any and *all individual claims held by the Participating Property Owners* (as that term is defined in the Funding Agreement) that seek reimbursement for monies paid to the City pursuant to the Funding Agreement." (Italics added.)

Dunn testified that the "supplemental assignment" "was a clarifying document to a previous assignment that rights were assigned under the Funding Agreement to Berg & Berg." He also testified that "the rights of all the other property owners" were assigned to Berg & Berg. Carl Berg agreed in his testimony that Berg & Berg had been "authorized or assigned the rights to bring this lawsuit on behalf of all the property owners."

However, it was undisputed that the other participating property owners never filed any government claims with City arising from the 2004 and 2006 funding and reimbursement agreements. Consistent with the purpose of government claims statutes, the general rule is that "a claimant must file his or her own claim." (*California*

37

*Restaurant Management Systems v. City of San Diego* (2011) 195 Cal.App.4th 1581, 1592; see also *Castaneda v. Department of Corrections and Rehabilitation* (2013) 212 Cal.App.4th 1051, 1062 (*Castaneda*) [same].)  Thus, the "filing of a claim by one party with respect to a particular prospective cause against a public entity does not serve to relieve another prospective party from so doing.  [Citations.]" (*Roberts v. State of California* (1974) 39 Cal.App.3d 844, 848.)  Absent a timely government claim, a plaintiff is barred from filing a lawsuit against a public entity.  (*DiCampli-Mintz*, *supra*, 55 Cal.4th at pp. 989-990.)

Since the other participating property owners never filed any government claims against City arising from the 2004 and 2006 funding and reimbursement agreements, they did not have any rights to government claims that could be assigned to Berg & Berg by the 2010 "supplemental assignment."  The special verdict on assignment, in which the jurors found that Yerba Buena Opco had transferred 100 percent of its "interest in the contract" to Berg & Berg, does not compel a different conclusion.  The special verdict did not include a finding regarding the date of the assignment or a finding that the other participating property owners had filed government claims that could be assigned to Berg & Berg.

Having determined that Berg & Berg could not assert the government claims of the other participating property owners as their assignee, we turn to the issue of substantial compliance.

### *Substantial Compliance Doctrine*

As we have noted, Berg & Berg filed a government claim with City on January 3, 2008.  The government claim stated that the name of the claimant was "Carl E. Berg, on behalf of Berg & Berg Enterprises, LLC" and the dates of the incident or occurrence causing the claim were May 15, 2007, and June 26, 2007.  Berg & Berg further stated in its government claim that it was a party to the " 'Funding and Reimbursement Agreement' . . . last amended on June 27, 2006."  Its claimed loss was described as

"[r]estitution in the amount of $1,892,917 for monies paid under Reimbursement Agreement, so far as is known at this time. Other damages to be determined."

Berg & Berg contends that its government claim was in substantial compliance with the statutory claims filing requirements, and therefore City was provided with sufficient information to investigate the claim and discover that Berg & Berg was acting in a representative capacity as the assignee to recover all of the money paid to City pursuant to the 2004 and 2006 funding and reimbursement agreements. As we will discuss, we find no merit in this contention.

"The doctrine of substantial compliance prevents the public entity from using the claims statutes as 'traps for the unwary' when their underlying purposes have been met. [Citation.] However, the substantial compliance doctrine has application only when there is a defect in form but the statutory requirements have otherwise been met. [Citations.] The doctrine has no application when . . . there has been a failure to comply with *all* of the statutory tort claim requirements." (*Nguyen v. Los Angeles County Harbor/UCLA Medical Center* (1992) 8 Cal.App.4th 729, 732-733 (*Nguyen*).) In addition, "[w]here two or more persons suffer separate and distinct injuries from the same act or omission, each person must submit a claim, and one cannot rely on a claim presented by another. [Citations.]" (*Nelson v. County of Los Angeles* (2003) 113 Cal.App.4th 783, 796-797.)

In *Nguyen*, the appellate court rejected the plaintiff parents' argument that they could rely on their daughter's government claim. (*Nguyen, supra,* 8 Cal.App.4th at p. 734.) The court determined that although the parents' emotional distress cause of action arose from the same transaction as their daughter's medical malpractice cause of action, the parents' cause of action was properly subject to nonsuit due to their failure to file a government claim because "the injuries allegedly suffered by the plaintiff parents were separate and distinct from those suffered by their daughter." (*Ibid*.; see also *Pacific Tel. & Tel. Co. v. County of Riverside* (1980) 106 Cal.App.3d 183, 190-191 [widow could not rely on subrogation claim filed by employer to recover workers' compensation

39

benefits as substantial compliance with the claims filing requirement for her wrongful death action]; *Lewis v. City and County of San Francisco* (1971) 21 Cal.App.3d 339, 341 [wrongful death claim filed by one heir did not excuse claims filing requirement for another heir under doctrine of substantial compliance].)

In the present case, it is undisputed that none of the participating property owners ever attempted to file a government claim with City arising from the 2004 and 2006 funding and reimbursement agreements. And, as we have discussed, the evidence shows that the other participating property owners had not assigned their potential government claims to Berg & Berg at the time Berg & Berg filed its government claim against City on January 3, 2008. In the absence of any attempt to comply with the government claims filing requirements, the doctrine of substantial compliance does not apply to the other participating property owners' potential government claims against City arising from the 2004 and 2006 funding and reimbursement agreements. (See *Nguyen*, *supra*, 8 Cal.App.4th at pp. 732-733.)

However, as also discussed in the *Nguyen* decision, a party need not file a separate government claim where that party's injuries are not separate and independent from the injuries suffered by another party who has filed a timely government claim. (*Nguyen*, *supra,* 8 Cal.App.4th at p. 734.) In other words, "[w]here the right of action is not separate and independent, but rather identical and wholly derivative [citation], there is no purpose to be served by requiring the filing of a second claim. [Citation.]" (*Smith v. Parks Manor* (1987) 197 Cal.App.3d 872, 881 (*Smith*).)

In this case, we determine that the harm suffered by other participating property owners—the loss of funds paid to City under the 2004 and 2006 reimbursement agreements—was not identical to, nor wholly derivative of, Berg & Berg's government claim. Carl Berg testified that Berg & Berg's proportionate share of the funds that the participating property owners had paid City under the 2004 and 2006 funding and reimbursement agreements was 23.5 percent. Since the other participating property

40

owners' proportionate share of the funds paid to City was therefore 76.5 percent, their right of action was not "equal to and limited by the right of action possessed" by Berg & Berg. (*Smith*, *supra*, 197 Cal.App.3d at p. 881.) Consequently, the substantial compliance doctrine does not apply to the restitution claims of the participating property owners who failed to comply with the government claims filing statutes. (§ 910; see *Nguyen*, *supra*, 8 Cal.App.4th at pp. 732-733.)

Berg & Berg relies on the decision in *Lacy v. City of Monrovia* (1974) 44 Cal.App.3d 152 (*Lacy*), but that decision is distinguishable. In *Lacy*, a father filed a government claim arising from an incident involving police officers allegedly breaking into the family home. (*Id*. at pp. 153-154.) The government claim expressly set forth the damages that the father claimed for his wife and three of their children with their names and the total amount claimed. (*Id*. at pp. 155-156.) The *Lacy* court found that a fourth child's cause of action was not barred although she was not named in her father's government claim, because it was clear that the father had presented a claim on behalf of his wife and children, and the total amount of the claim was the same "whether it is all included in the claim presented by Mr. Lacy on behalf of his wife and children or presented separately in two claims." (*Id*. at p. 156.) In contrast, in the present case Berg & Berg's government claim lacked any indication that the claim included restitution of all funds paid to City by the other participating property owners in addition to Berg & Berg's share. (See *Castaneda*, *supra*, 212 Cal.App.4th at p. 1062.)

Another decision relied upon by Berg & Berg, *White v. Moreno Valley Unified School Dist.* (1986) 181 Cal.App.3d 1024 (*White*) is similarly distinguishable. In *White,* the appellate court concluded that the plaintiff's government claim was sufficient to support her action for recovery of her medical expenses, and therefore the trial court committed prejudicial error in excluding the evidence of those medical expenses. (*Id.* at p. 1034.) The court noted that the plaintiff's government claim expressly stated that the claim was for "[p]ersonal injuries to Claimant Yvonne White. Medical expenses incurred

41

by [her parents] Claimants Winford Bradshaw and Romona [*sic*] Bradshaw." (*Id.* at p. 1027.) Berg & Berg's government claim, in contrast, was silent as to the identity of any other claimant.

Berg & Berg also argues that the decision in *San Diego Unified Port Dist. v. Superior Court* (1988) 197 Cal.App.3d 843 (*San Diego*) supports its position. We disagree. In *San Diego*, the issue was whether a workers' compensation insurance carrier who wanted to intervene in an injured employee's personal injury action could rely on the government claim filed by an injured worker in order to satisfy the government claims filing requirement. (*Id.* at p. 845.) The appellate court determined that the insurance carrier did not need to file its own government claim, because under Labor Code section 3852 "[t]he carrier may not recover any damages in excess of those recoverable by the employee. [Citation.]" (*San Diego, supra,* at p. 847.) Thus, the insurance carrier's claim for recovery of damages was identical to the injured employee's damages claim, unlike the potential claims of the other participating property owners for recovery of funds paid to City that were not identical to Berg & Berg's restitution claim.

For these reasons, we determine that the trial court made an error in law in ruling that Berg & Berg could seek recovery of all funds paid to City by the other participating property owners under the substantial compliance doctrine. Having previously determined that Berg & Berg failed to prove that it was assigned the government claims of the other participating property owners, we conclude that the trial court abused its discretion in denying City's motion for new trial.

We will therefore reverse the judgment and remand the matter with directions to the trial court to (1) grant City's motion for new trial; (2) conduct a new court trial limited to the issue of the amount of restitution to be awarded to Berg & Berg based on its proportionate share of the consideration paid by the participating property owners under the 2004 and 2006 funding and reimbursement agreements; and (3) determine the amount of prejudgment interest to be awarded. (See *Runyan*, *supra*, 2 Cal.3d at p. 316.)

Having concluded that the judgment should be reversed, we further conclude that issue raised by City regarding prejudgment interest—whether the trial court erred in its application of a prejudgment interest rate of 10 percent—is moot, and we express no opinion on the issue.

## IV.  CROSS-APPEAL

In its cross-appeal, Berg & Berg contends that the trial court erred in granting City's motion for summary adjudication of the cause of action for violation of the equal protection clause.  Berg & Berg also challenges the trial court's award of prejudgment interest.

### A.  *Equal Protection Claim*

#### 1.  City's Motion for Summary Adjudication

In its complaint, Berg & Berg included an equal protection cause of action based on its allegations that defendants had approved the rezoning of several other properties to allow residential uses during the period of 2004 through 2007, and in 2007 City Council was also scheduled to consider the rezoning of additional properties for residential uses. Berg & Berg asserted that "[t]he actions and inaction of Defendants in delaying the processing of the developers' development applications, while approving similar applications of similarly-situated property owners within the City, were clearly arbitrary, capricious and unreasonable, having no real or substantial relation to the public health, safety, morals or general welfare, and deprived Berg and the developers of their civil rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, California Constitution . . . ."

City moved for summary adjudication of the equal protection cause of action on the ground that the undisputed facts showed that the City Council's decision to defer conversion of land zoned campus industrial to the pending general plan update was based on legitimate government purposes, including "the imbalance between housing and employment" and "the long-term financial impacts to the City over the proposed

43

employment land conversions." Berg & Berg opposed the motion, arguing that there were triable issues of fact as to whether defendant had a rational basis for refusing to act on Berg & Berg's development applications while approving the conversion of other properties from industrial to residential.

### 2. Trial Court Order

In its September 8, 2011 order, the trial court granted summary adjudication of the equal protection cause of action. The court found that defendants had met their initial burden to show that the City Council's approval of other applications and the deferral of Berg & Berg's application was not wholly irrational. The court further found that Berg & Berg had not demonstrated that triable issues of material fact existed because the difference in defendants' treatment of Berg & Berg was so unrelated to a legitimate government purpose that it could only be concluded that the government's actions were irrational.

### B. *Standard of Review*

The standard of review for an order granting a motion for summary judgment or summary adjudication is de novo. (*Aguilar, supra,* 25 Cal.4th at p. 860.) The trial court's stated reasons are not binding on the reviewing court, "which reviews the trial court's ruling, not its rationale. [Citation.]" (*Ramalingam v. Thompson* (2007) 151 Cal.App.4th 491, 498.)

In performing our independent review, we apply the same three-step process as the trial court. "Because summary judgment is defined by the material allegations in the pleadings, we first look to the pleadings to identify the elements of the causes of action for which relief is sought." (*Baptist v. Robinson* (2006) 143 Cal.App.4th 151, 159 (*Baptist*).)

"We then examine the moving party's motion, including the evidence offered in support of the motion." (*Baptist*, *supra*, 143 Cal.App.4th at p. 159.) A defendant moving for summary judgment has the initial burden of showing that a cause of action lacks merit

44

because one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (o); *Aguilar, supra*, 25 Cal.4th at p. 850.)

If the defendant fails to make this initial showing, it is unnecessary to examine the plaintiff's opposing evidence and the motion must be denied. However, if the moving papers make a prima facie showing that justifies a judgment in the defendant's favor, the burden shifts to the plaintiff to make a prima facie showing of the existence of a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar, supra*, 25 Cal.4th at p. 849.)

In determining whether the parties have met their respective burdens, "the court must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citations], and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party." (*Aguilar, supra,* 25 Cal.4th at p. 843.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id.* at p. 850, fn. omitted.) Thus, a party " 'cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact. [Citation.]' [Citation.]" (*Dollinger DeAnza Associates v. Chicago Title Ins. Co.* (2011) 199 Cal.App.4th 1132, 1144-1145.)

Keeping the standard of review in mind, we next consider the provisions of the state and federal equal protection clauses.

## C. *Equal Protection Clause*

The federal equal protection clause (U.S. Const., 14th Amend.) and the California equal protection clause (Cal. Const., art. I, § 7, subd. (a)) both provide that all persons similarly situated should be treated alike. (See *Cleburne v. Cleburne Living Center, Inc.* (1985) 473 U.S. 432, 439.) " ' "The concept of the equal protection of the laws compels

45

recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment." ' [Citation.]" (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.)

In *Village of Willowbrook v. Olech* (2000) 528 U.S. 562, the United States Supreme Court ruled that an equal protection claim could be brought by a " 'class of one,' where the plaintiff alleges that she [or he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. [Citations.]" (*Id*. at p. 564.) The Supreme Court reasoned that the purpose of the equal protection clause " ' "is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." ' [Citations.]" (*Ibid.*)

**D.** *Analysis*

On appeal, Berg & Berg contends that the trial court erred in granting summary adjudication of its equal protection cause of action because when the evidence is carefully examined, it shows that City did not have a rational basis for believing that its refusal to process Berg & Berg's development applications would result in job creation on Berg & Berg's property. Alternatively, Berg & Berg contends that even assuming that there was a rational basis for denying Berg & Berg's development applications, there was no rational basis for approving the applications of other developers without the "employment triggers" required to approve Berg & Berg's application, or for placing the burden on Berg & Berg to provide employment lands.

City disagrees, arguing that the court must presume that the City Council's decisions regarding Berg & Berg's development applications were constitutional because the evidence showed that there were legitimate reasons for the government action, and therefore summary adjudication of the equal protection claim should be affirmed.

46

It is well established that where, as here, the equal protection claim arises from a public entity's land use decisions, we apply the rational basis test. (See *Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 858-859 (*Las Lomas*).) "The rational basis test is extremely deferential and does not allow inquiry into the wisdom of government action. [Citation.] A court must reject an equal protection challenge to government action 'if there is any reasonably conceivable state of facts that could provide a rational basis for the [difference in treatment]. [Citations.]' [Citations.] 'Where there are "plausible reasons" for [the] action, "our inquiry is at an end." [Citation.]' [Citation.]" (*Ibid.*)

Thus, "[u]nder the rational basis test, courts must presume the constitutionality of government action if it is plausible that there were legitimate reasons for the action. In other words, the plaintiff must show that the difference in treatment was ' "so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the [government's] actions were irrational." ' [Citation.]" (*Las Lomas, supra,* 177 Cal.App.4th at p. 859; see also *Arcadia Development Co. v. City of Morgan Hill* (2011) 197 Cal.App.4th 1526, 1534-1535; *Griffith v. City of Santa Cruz* (2012) 207 Cal.App.4th 982, 994.)

Here, City's motion for summary adjudication was based on evidence showing that it was plausible that the City Council's deferral of Berg & Berg's development applications was based on legitimate reasons. City's evidence showed that prior to the City Council's vote on May 15, 2007, to defer consideration of all campus industrial land conversions "associated with the Evergreen East Hills Vision strategy to the City's General Plan update process," the City Council considered the "financial impacts arising from conversions of employment land to residential, potential City exposure to transportation cost overruns, and the benefits of studying the employment land conversion issue through the General Plan update."

47

This evidence alone is sufficient to establish that it is plausible that there were legitimate reasons for the City Council's deferral of Berg & Berg's applications for a zoning change for its Evergreen campus industrial properties, and therefore the rational basis test is satisfied as a matter of law. (See *Las Lomas*, *supra*, 177 Cal.App.4th at pp. 858-859.) Berg & Berg's contrary argument is not convincing, since Berg & Berg essentially argues that there are triable issues of fact as to whether the City Council's decisions with regard to Berg & Berg's applications actually had a legitimate public purpose. Even where it is arguable that a public entity's land use decisions were not taken for a legitimate purpose, an equal protection claim based on those decisions will fail. (*Stubblefield Construction Co. v. City of Bernadino* (1995) 32 Cal.App.4th 687, 714.) " 'If the legislative determination that its action will tend to serve a legitimate public purpose "is at least debatable", the [equal protection] challenge to that action must fail as a matter of law.' [Citation.]" (*Ibid*.)

Moreover, the decisions on which Berg & Berg relies for a contrary result are inapplicable. In *Ross v City of Yorba Linda* (1991) 1 Cal.App.4th 954 (*Ross*), the appellate court determined that the City of Yorba Linda had engaged in discriminatory spot zoning of the plaintiffs' lot. (*Id*. at p. 959.) The *Ross* court stated: "A blatant example of discriminatory land use legislation is 'spot zoning.' Spot zoning is '[w]here a small parcel is restricted and given less rights than the surrounding property . . . .' [Citation.]" (*Id*. at p. 960.) The decision in *Ross* is obviously distinguishable from the present case, which does not involve spot zoning.

In *G & D Holland Construction Co. v. City of Marysville* (1970) 12 Cal.App.3d 989 (*G & D Holland*), the petitioners sought a writ of mandate to compel issuance of a building permit for a low-income apartment building. (*Id*. at p. 992.) The appellate court ruled that "where 'spot zoning' or other restriction upon a particular property evinces a discriminatory design against the property user, the courts will give weight to evidence disclosing a purpose other than that appearing upon the face of the regulation.

[Citations.]" (*Id*. at pp. 994-995.) The *G & D Holland* decision is therefore distinguishable from the present case, where there is no issue of spot zoning or restriction only upon Berg & Berg's Evergreen property. It is undisputed that the City Council voted to defer consideration of all applications for conversion of campus industrial land in the Evergreen East Hills area, not just Berg & Berg's applications, while the update of City's general plan was pending.

We therefore conclude that the trial court did not err in granting City's motion for summary adjudication of the equal protection cause of action, and we will affirm the order.

### E. *Prejudgment Interest*

On appeal, Berg & Berg contends that the trial court erred in awarding prejudgment interest from the date of the verdict, May 31, 2012, instead of the date the original complaint was filed, August 13, 2007. Berg & Berg seeks prejudgment interest in the amount of $2,918.251.60.

Since we have concluded that the judgment must be reversed, we also conclude that the issue of prejudgment interest raised by Berg & Berg in its cross-appeal is moot, and we express no opinion on the issue.

## V. DISPOSITION

The judgment is reversed. The matter is remanded with directions to the trial court to (1) grant City's motion for new trial; (2) conduct a new court trial limited to the issue of the amount of restitution to be awarded to Berg & Berg based on its proportionate share of the consideration paid by the participating property owners under the 2004 and 2006 funding and reimbursement agreements; and (3) determine the amount of prejudgment interest to be awarded. The September 8, 2011 order granting summary adjudication of the equal protection cause of action is affirmed. The parties are to bear their own costs on appeal.

49

_____
BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____
ELIA, ACTING P.J.

_____
MIHARA, J.